Shields, J.
Suit was brought in the court below by the defendant in error as plaintiff to recover of the plaintiff in error as defendant th¿ sum of $1,060 which said sum, after alleging that the defendant bank is a corporation under the national banking laws of the United States at Canton, Ohio, he alleges was deposited with the defendant bank August 17, 1918, on a savings account by the terms of which said bank agreed in writing to pay to the de-fendant a stipulated rate of interest thereon, to be drawn as the plaintiff desired. That said bank issued to the plaintiff on said day a pass-book containing said account, which pass-book on May 7, 1919, was stolen from the plaintiff, and on May 8, 1919, he duly notifed said bank thereof.. That the plaintiff has. performed all the terms and conditions .of said agreement on his part, and although demanded, said bank has refused and still refuses to pay said sum, with interest, to the plaintiff and judgment is prayed therefor.
In its answer the defendant hank, for a first defense, admits that the plaintiff deposited with it the aggregate sum of $1,066.59, but that on May 7, 1919, it paid the plaintiff $1,000, of said sum.
For a second defense, it alleges “that on the day of the opening of said savings account the .plaintiff accepted a certain passbook and signed a signature card and thereby agreed, to the written rules and'regulations contained in said pass-book. That on Mar 15, 1919, there was due the plaintiff on said savings account a total credit of $1,066.59. That on May 7, 1919, a person representing himself to be and whom the defendant believed to be the plaintiff, presented himself at tbe savings department of the defendant’s bank stating that he desired to withdraw the sum of $1,000, in said account and duly presented said passbook and gave a receipt in writing in plaintiffs name for said sum, and thereupon the defendant (no notice having been given to it prior thereto that plaintiff’s passbook has been stolen or lost; paid to said person said sum of $1,000, and tbe defendant avers that it was entitled by virtue of said rules and in consequence of plaintiff’s failure to notify the defendant of the loss of said passbook (if it had in fact been lost,or stolen11 to make payment *35 as aforesaid and if tlie plaintiff sustained any loss, which the defendant denies, the defendant is not responsible therefor.”
For reply to the first defense in said defendant’s answer, the plaintiff denies that on May 7, 1919, or at any oilier time, th'e defendant bank paid him $1,000 on said account, and except that he accepted said passbook and agreed to the written rules and regulations therein, and deposited the several sums therein stated, he denies each and every allegation in said hank’s second defense.
Under the foregoing issues a verdict and judgment were rendered in favor of the defendant in error and it is sought to reverse said judgment by proper proceedings in this court.
Several grounds of error are alleged in the petition in error, the first and second grounds being to the rulings of the trial court in admitting and rejecting testimony offered during the trial. Upon a reading of the bill of exceptions we are unable to find any exceptions taken and preserved upon the record to the admission of testimony over the objection of the plaintiff in error, except the following appearing in the re-examination of Martin Kolp, a witness for the plaintiff.
Q. Mr. Kolp, I hand you defendant’s Exhibit 1 and Exhibit 5, which is the withdrawal slip, and ask you to tell the jury whether or not there is any more variation in these two signatures than there generally is among foreigners’ signatures?
Plaintiff objects. Objection sustained.-Defendant excepts
“Sir. Lynch. We expect the witness to answer that there was no more variance between the signature card signed by Tom Karas in August, 1918, and the withdrawal slip signed by the person who withdrew the thousand dollars than is found generally and ordinarily in the usual transaction of business at the savings department of the First National Bank among the foreigners who are depositors of that bank in that department.”
It is unnecessary to add that what may have been observed in the business transactions at this bank with reference to' the variance of signatures of foreigners, does hot create or establish a standard of comparison by which the rights of this depositor were to be determined, nor would what is claimed to have *36 been ■ observed as a custom among other foreigners affect the status of this depositor. The question at issue was, Was the -signature on the withdrawal card the genuine signature of Tom Karas? We think the action of the court in sustaining the objection to the question was proper and affords no ground of reversible error.
Under specification of error, No. 3, it was argued that the court below erred in its general charge to the jury, especially with reference to the right of the defendant in error to recover the balance of $66.59 standing to bis credit after tbe payment of $1,000 on May 7, 1919, and interest thereon, “in the event that the jury found that the passbook of the defendant in error had been stolen, without giving or offering to the bank any indemnity against a subsequent claim being asserted or enforced against the bank for the same identical sum, and notwithstanding the evidence submitted failed to show that ?..nv demand had beer made upon the bank by the defendant in error for the payment of said specific sum.” As we read the record, a demand was made by the plaintiff in error for the payment of the full amount of the deposit made with it by the plaintiff in error on the morning following the day of the theft of said pass-book: also on the occasion of a call made by him upon the bank officers in company with one of his counsel. As to any indemnity being offered or given to the hank by the defendant in error to protect it against any subsequent claim being made for tbe same money, it appears that no demand was made by the bank of the defendant in error for such indemnity, nor was any offer made by the bank to pay over tbe money to the defendant in error, and there havj ing been no such offer, nor anything said upon the subject, it appears that affirmative action in this respect upon the part of the defendant in error was not called for. But if anything was' lacking to support the view indicated, we think the ease falls within the principle laid down in the ease of Bank v. Brown, 45 O. S., 39, and eases therein cited, wherein it is held that a tender of indemnity against future liability in a ease of the character! of the one under consideration is not necessary.
*37 The next and perhaps the main grounds of error were that the verdict was not sustained by the evidence and was contrary to the clear and manifest weight thereof, and said judgment is contrary to law. The iaw of the case having been correctly given to the jury under the rule laid down in Savings & Banking Co v. Anderson, 78 O. S., 34], and it appearing that there was no substantial disagreement between the parties as to the essential facts, the outcome of the ease as it appeal's from .this record hinged upon the question as to the good faith and reasonable care exercised by the bank in allowing the withdrawal of the sum of $1,000 on May 7, 1919, -which said sum, as the defendant in error claims, was paid by the bank to some unknown person without his knowledge or authority. That the rules and regulations of the bank as printed in the pass-book became a parr of the agreement between the bank and the depositor when accepted by the latter, admits of no discussion, but as said by the judge speaking for the court in the ease cited:
“The bank is bound to exercise good faith and reasonable care in making payment, so that payment shall be made to the person entitled to receive payment; and this is so because public policy will not allow7 the bank to strip itself of responsibility by contracts so as to enable it to safely pay, intentionally or heedlessly, to one who has come into possession of the pass-book fraudulently or criminally.”
Here it appears that the pass-book of the defendant in error was stolen from his suitcase while he was absent, engaged in his daily occupation, and presented to the bank, presumably, by the person stealing it, and the assistant bank teller, supposing and believing that such person so presenting the pass-book to be its rightful owner and who represented himself to be Tom Karas, the person named therein, upon his application after comparing the signature of such person made on the withdrawal slip with the signature of the depositor on the original signature card, signed by the depositor at the time of opening his account with the savings department of said bank, and believing them' to be identical, paid to such person the sum of- $1,000, and en *38 terecl the same in said pass-book May 7, 3919. It further ap pears that on the morning of May 8,1939, shortly after said bank opened for business, the defendant in error presented himself at said bank and made known to the managing agent of the savings department of said bank that his pass-book had been stolen the day before and that he desired another book. Upon an examination of certain bank books, -his attention was called to the fact that $1,000 had been drawn on his account the day previous, and that such payment had been made through 1:1m assistant teller, who after testifying in chief to the tacts as nereinbefore stated, on cross examination testified as follows;
11Q. This man that you paid the money to and who signed that withdrawal slip, he was alone,was he?
A. Yes, sir.
Q. And you didn’t know him personally?
A. No, sir.
Q. Did you remember seeing him before?
A. No, sir.
Q. You have paid out money on diflerent savings accounts to different people while you have been there in the bank?
A. Yes, sir.
Q. Did you ever ask anybody to get somebody to identify them?
A. I have.
Q. You didn’t in this case though?
A. No, sir!
Re-Cross Examination. Q. The fact that this man came to you and said he wanted this thousand dollars and not knowing the man at all, you didn’t think it was necessary, because of the signature, that he should identify himself?
A. I did not.”
In First Natl. Bank, of Belmont v. First Natl. Bank of Barnesville, 58 O. S. 207, it is held that,
“The general rule is that the drawee of a check, draft or bill of exchange is held to know the signature of the drawer, and makes payment at his own peril.”
This is the undoubted rule under commercial accounts, but it is claimed that the rule is different where there is a contract between the depositor and the bank, one being that of a guarantor and the other one of contract. While this relation may deter *39 mine the method of payment in respect to the presentation of one’s pass-book when payment is made on the account therein, we fail to see where it changes the rule in respect to the authenticity of a signature to a cheek drawn on such account. Here it appears in the testimony of the assistant-teller that the $1,000 was paid to an unidentified stranger. Under this admitted condition of things, did the bank “exercise good faith and reasonable care in making payment so that payment shall be to the person entitled to receive payment?”
The bank further claimed through witnesses who claim to be experts in the matter of handwriting because of their long experience and training in analyzing signatures to bank and other papers, that the signature on the withdrawal slip and the admitted genuine signatures on the several exhibits shown, are signatures made by the same person. Without commenting on the value of this class of testimony, it will be sufficient to sa„« that the testimony of these witnesses, who are all known to be reputable and high class business men. who are accustomed v, ■compare disputed signatures with admitted genuine signatures, was submitted to the jury with all the other testimony offered and introduced upon the trial of the case, under proper instructions by the trial court. The question presented was one of fact for the determination of the jury. These witnesses were before the jury and of their credibility and the weight to be given to their testimony it was the peculiar province of the jury to determine. Commenting on the conflict of evidence in a case tried to a jury, it is held in Breese v. State, 12 O. S., 146 that:
“A judgment will not be reversed because the verdict is contrary to the evidence, unless it is manifestly so, and the reviewing court will always hesitate to do so where the doubts of its propriety arise out of a conflict in oral testimony. ’ ’
Upon the application of the rule of law here- stated, and in view of the record here presented, we find no authority justifying us as a reviewing court to interfere with the judgment of the court below. The judgment of ihe court below will therefore be affirmed.
Houck, J., and Patterson, J., concur.